UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUDITH COELHO AND DENNIS COELHO,

Plaintiff,

v.

PROMUTUAL GROUP,

Defendants.

CIVIL ACTION NO. 05-11833 NMG

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STAY ALL
PROCEEDINGS UNTIL RESOLUTION OF THE UNDERLYING TORT SUIT**

This case arises out of an underlying medical malpractice suit, pending in state

court, brought by plaintiffs Judith and Dennis Coelho against Alice Daley, M.D. and

PMG Physician Associates, P.C. ("PMG").  In this action, plaintiffs allege that defendant

ProMutual Group ("ProMutual"),[1] the professional liability insurer for Dr. Daley and

PMG (collectively, the "insureds"), has violated Mass. G.L. c. 93A by failing to make a

reasonable offer of settlement of plaintiffs' claims in the underlying action.

ProMutual moves to stay all proceedings in this action[2] until the underlying

claims against its insureds have been resolved and it is determined whether or not

ProMutual's insureds have any liability for plaintiffs' alleged injuries and if so, the

amount of such liability.  This procedure has been followed in numerous other cases and

---

[1]   The correct name for the defendant is Medical Professional Mutual Insurance Company.

[2]   Plaintiffs served interrogatories and a document request on ProMutual along with their
Complaint.  These requests are a nullity, as plaintiffs have not satisfied the prerequisites to
serving discovery imposed by Fed.R.Civ.P. 26 (d) or Local Rule 26.2, but as a matter of caution,
ProMutual notes that its request for a stay would encompass its responses to these discovery
requests were they proper.

256900.1

likewise, should be employed here.  A stay will save the Court and the parties from

potentially wasteful expenditures of time and effort, will prevent the Court from having

to resolve discovery disputes raising complex privilege and work-product issues and will

prevent the risk that ProMutual and its insureds would be prejudiced, and plaintiffs

unfairly advantaged, if plaintiffs were allowed to proceed with discovery into

ProMutual's handling of the claims while the claims remain pending.

## BACKGROUND

Plaintiffs filed this action on or about September 9, 2005.  Over two years earlier,

on April 10, 2003, plaintiffs filed a professional negligence suit against ProMutual's

insureds, *Judith Coelho and Dennis Coelho* v. *Alice M. Daley, M.D. and PMG Physician

Associates, Inc.*, Barnstable County Superior Court Civil Action No. 2003-00228 (the

"underlying suit").  Discovery in the underlying suit has closed and the pretrial

conference is scheduled for November 30, 2005.  (Docket, Entry 19). [3]

Although this motion does not go to the merits of plaintiffs' c. 93A claim,

ProMutual denies that it has acted unfairly or in bad faith in handling plaintiffs'

underlying claims or has otherwise violated G.L. c. 93A.  As set forth in its September 2,

2005 response to plaintiffs' c. 93A demand, depositions in the case were not completed

until June 2005, and ProMutual then sought expert reviews concerning the stage of Mrs.

Coelho's cancer at the time it allegedly should have been diagnosed and when it was

diagnosed and the effect of the alleged delay on Mrs. Coelho's prognosis. [4]  ProMutual is

---

[3]    A copy of the Amended Complaint in the underlying suit is attached as Exhibit A and a copy of a
printout of the electronic Docket Sheet in the underlying suit is attached as Exhibit B.

[4]    A copy of ProMutual's September 2, 2005 response is attached as Exhibit C.

entitled to rely on opinions from qualified experts to assess a claimant's alleged injuries. *See Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671 (1983) (where expert had opined that insured was not liable, insurer was entitled to summary judgment on c. 93A claim even though the jury in the underlying suit found the insured liable); *Mayer* v. *Medical Malpractice Joint Underwriting Association of Massachusetts*, 40 Mass. App. Ct. 266 (1996) (same).

## ARGUMENT

### I.    BOTH FEDERAL AND STATE COURTS IN MASSACHUSETTS HAVE STAYED CLAIMS ALLEGING UNFAIR SETTLEMENT PRACTICES UNTIL THE UNDERLYING TORT CLAIMS ARE RESOLVED.

All proceedings in this action should be stayed until the claims against ProMutual's insureds are tried or settled.  Massachusetts courts repeatedly have recognized that until liability and damages in a plaintiff's claim against an insured are determined, it is impossible to determine the merits of the plaintiff's claim against the defendant's insurer alleging wrongful failure to settle.  Therefore the claims against an insurer routinely are stayed until the underlying claim is resolved.

The Massachusetts Appeals Court, for example, recently endorsed the practice of staying bad faith failure to settle claims pending the outcome of the underlying negligence action.  In *M.J. Flaherty Co.* v. *United States Fidelity & Guaranty Co.*, 61 Mass. App. Ct. 337 (2004), Flaherty, a subcontractor, had sued Granger, a general contractor, for breach of contract.  In that action, the subcontractor also sought payment from USF&G, which had provided a payment bond for the construction project.  *Id.* at 338.  While the contract action was pending, the subcontractor filed a separate action against USF&G in which it alleged that USF&G had violated G.L. c. 93A and 176D by

failing reasonably to investigate and settle the subcontractor's claims against the general contractor.  *Id.*

 The Appeals Court, reasoning that the two actions raised distinct issues, held that the trial court had wrongly dismissed the second, c. 93A action under Mass. R. Civ. P. 12(b)(9), which precludes a new suit when there is a prior pending action between the parties.  *Id.* at 339.  In the context of discussing the plaintiff's decision to file a separate c. 93A action, rather than to amend its contract action to add a c. 93A claim, the Court endorsed the practice of staying proceedings on a bad faith failure to settle claim in order to avoid prejudicing the defense of the underlying case.  The Court expressly noted that "Superior Court judges may take the sensible step of staying the unfair settlement claim pending the outcome of the underlying negligence claim."  *Id.* at 340.

 Single justices of the Massachusetts Appeals Court consistently have refused to allow plaintiffs to proceed on a claim for unfair settlement practices while the underlying tort claim is pending.  In *Gross* v. *Liberty Mutual Ins. Co.*, No. 84-0138, *slip op.* at 2 (Mass. App. Ct., April 24, 1984) (Kass, J., acting as a single justice), the court vacated the Superior Court's denial of a protective order in an action under G.L. c. 93A, stating:

> The significant fact is that the liability of [the] insured, and the damages flowing from that liability, have yet to be ascertained.  Should there be a verdict in favor of [the] insured, should there be a verdict within range of the [amount] offered, or should there be a settlement within the range of the [amount] offered, a claim of unfair settlement could scarcely be made out.

Similarly, in *Belcher* v. *Pawtucket Mutual Ins. Co.*, No. 89-J-672, *slip op.* at 1 (Mass. App. Ct., October 5, 1989) (Kass, J., acting as a single justice), the Court granted a protective order precluding discovery of the insurer's files, stating:  "to authorize discovery in an unfair settlement claim before the underlying claim has been established

256900.1

is to get the cases in the wrong order." Indeed, a Single Justice has noted that motions to sever and stay c. 93A claims are "routinely allowed, if only to prevent discovery of the insurer's impressions of the case based upon legal theory and privileged communications, and thereby prevent interference with the insureds' right to be adequately defended." *Kai* v. *Kim-Son*, No. 98-J-65, slip op. at 1 (Mass. App. Ct. Feb. 11, 1998) (Spina, J.). *See also Royal Ins. Co.* v. *Stoneham Auto Body*, No. 93-J-923 (Mass. App. Ct., Dec. 7, 1993) (Gillerman, J., acting as a single justice) (staying discovery with respect to c. 93A claim until underlying claim resolved).[5]

Trial court judges, both in this Court and Massachusetts state court, likewise have granted motions to stay proceedings on c. 93A claims until the underlying claims are resolved. *See, e.g., Hanrahan* v. *NCMIC Ins. Co*., United States District Court for the District of Massachusetts, Civ. A. N. 04-12012-DPW (see docket entry no. 17); *Rurak* v. *Medical Professional Mutual Ins. Co*., United States District Court for the District of Massachusetts, Civ. A. No. 02-12274-PBS (see docket entry no. 41); *Armata* v. *Kaufmann and Medical Professional Mutual Insurance Company*, Middlesex Sup. Ct. C.A. No. 96-2019-D (June, 1996); *Bellanton* v. *Daniel,* 4 Mass. L. Rptr. 676, 678 (Suffolk Sup. Ct. Dec. 1995); *Miller* v. *Muto*, United States District Court C.A. No. 97-11049-NG (August 31, 1998); *Storms* v. *Boustany*, Suffolk Sup. Ct. C.A. No. 03-2669C (July 7, 2005).[6]

---

[5]    Copies of the *Gross*, *Belcher*, *Kai* and *Royal* decisions are attached as Exhibits D through G, respectively.

[6]    Copies of the *Hanrahan* and *Rurak* dockets and the *Armata*, *Bellanton*, *Miller* and *Storms* decisions are attached as Exhibits H through M, respectively.

## II.    NUMEROUS COURTS IN OTHER JURISDICTIONS HAVE STAYED CLAIMS ALLEGING UNFAIR SETTLEMENT PRACTICES.

The numerous Massachusetts decisions staying bad faith claims are in accord with decisions from other jurisdictions.  Indeed, several courts outside of Massachusetts have even stayed first-party bad faith claims (that is, bad faith claims brought by the insured rather than as here, a third party asserting a claim against the insured).  Because there is no risk of prejudice to a non-party insured in first-party bad faith cases, such cases present less compelling grounds for a stay than third-party bad faith claims, such as this one.  Nonetheless, like Judge Kass in *Gross*, these courts cite the potential that the resolution of the underlying claim will eliminate the bad faith claim.  Courts from other jurisdictions also have recognized the risk of prejudice to the insurer if the bad faith claim were allowed to proceed, and the complex privilege and work issues that would result if the underlying and bad faith claims were allowed to proceed together.  *See, e.g., State Farm Fire & Casualty Co.,* v. *Madden,* 451 S.E. 2d 721, 726 (W.Va. 1994) (staying third-party bad faith claims against insurer to prevent prejudice to the insured and to prevent "Pandora's box" of discovery motions that could result if discovery were allowed to proceed); *Warnke v. IMT Ins. Co.*, 657 N.W. 2d 715, 716 (Iowa 2003) (stating that it was "prudent" to stay claim for bad faith denial of coverage until underlying action resolved); *Durbin v. State Farm Mutual Auto Ins. Co.,* 2001 WL 1793734 (W.D. Ky. 2001) (staying claim for bad faith denial of underinsured motorist benefits until underlying claim resolved because discovery on bad faith claim could reveal insurer's strategy on contract claim); *Dunn v. Way,* 786 P.2d 649, 653 (Mont. 1990) (holding that trial court properly exercised discretion in staying claim for bad faith handling of claim under homeowner's policy because of risk of prejudice to insurer and because of

- 6 -

possibility that resolution of contract claim would affect resolution of bad faith claim); *Fode* v. *Farmers Ins. Exchange*, 719 F.2d 414, 417 (Mont. 1986) (staying claims under Montana unfair claims settlement statute, which imposes same requirements as Mass. G.L. c. 176D, until underlying third-party claim resolved); *Bartlett* v. *John Hancock Mutual Life Ins. Co.,* 538 A.2d 997, 1002 (R.I. 1988) (recommending that trial courts stay discovery on bad faith claims until the underlying claim is resolved in the plaintiffs' favor); *South Hampton Refining Co. v. National Union Fire Ins. Co.*, 875 F. Supp. 382, 384 (E.D. Tex. 1995) (staying claim for bad faith denial of coverage so that parties will not waste valuable resources attending to claims which could be disposed of by a determination of the insurance coverage); *Mid-Century Ins. Co. v. Lerner,* 901 S.W.2d 749, 752-53 (Tex. App. 1995) (holding that trial court's denial of motion to stay claim for bad faith denial of underinsured motorist benefits was an abuse of discretion because insurer should not be forced to choose between jeopardizing defense of contract claim by waiving privilege or jeopardizing defense of bad faith claim by not waiving privilege); *United States Fire Ins. Co. v. Millard,* 847 S.W.2d 668, 673 (Tex. App. 1993) (holding that trial court's denial of motion to stay claim for bad faith denial of underinsured motorist benefits was abuse of discretion in part because parties should not be put to effort and expense of conducting discovery where bad faith claims may be disposed of by resolution of contract claim); *Dahmen v. American Family Mutual Ins. Co.,* 635 N.W. 2d 1, 6 (Wisc. App. 2001) (holding that trial court's denial of motion to stay claim for bad faith denial of underinsured motorist benefits pending resolution of contract claim was abuse of discretion because of risk of prejudice to insurer if discovery were allowed to

proceed and possibility that resolution of contract claim would dispose of bad faith claim).

**III.    A STAY WILL PREVENT THE COURT FROM UNNECESSARILY HAVING TO RESOLVE COMPLEX PRIVILEGE ISSUES AND WILL PREVENT PREJUDICE TO PROMUTUAL AND ITS INSUREDS.**

The stay requested by ProMutual will save the Court and the parties from potentially wasteful expenditures of time and effort since, as Judge Kass observed in *Gross*, the claims against ProMutual may well be mooted by the result in the underlying case.  *See also Dehman,* 635 N.W. 2d at 6; *Millard*, 847 S.W. 2d at 673; *Dunn*, 785 P. 2d at 653; *South Hampton*, 875 F. Supp. at 384.

A stay also will prevent the Court from having to resolve – perhaps unnecessarily – discovery disputes raising complex privilege and work-product issues.  *See Madden*, 451 S.E.2d at 726 (in context of ruling on motion to stay third-party bad faith claim, referring to anticipated motions by insurer to bar discovery of claim file on privilege and work product grounds as "a Pandora's box that we would as soon not open").  For example, as is common in c. 93A claims, plaintiffs likely would seek discovery of ProMutual's claim file in connection with their c. 93A claim.[7]  These materials were created in anticipation of litigation, and thus ordinarily would not be discoverable by the plaintiffs in the malpractice action.  Mass. R. Civ. P. 26(b)(3) (stating that materials prepared by a party's insurer in anticipation of litigation are protected work product). The claim file also contains privileged communications with defense counsel.  *McCourt*

---

[7]    By addressing the discovery disputes that would follow if plaintiffs' c. 93A claim were permitted to proceed while the underlying claims remain pending, ProMutual does not concede that its claim file materials would be discoverable in this action.  It instead seeks to describe some of the issues that the Court likely would be asked to resolve.

*Co., Inc.* v. *FPC Properties, Inc.*, 386 Mass. 145, 146 (1982) (defense counsel retained by liability insurer represents both the insurer and the insured).

Further, any disclosure of these confidential materials while the underlying action is pending could be prejudicial to ProMutual's insureds. *See, e.g., Moradi-Shalal* v. *Fireman's Fund Ins. Co.*, 758 P.2d 58, 70 (Cal. 1988) ("unless the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer"); *Madden*, 451 S.E.2d at 726 ("discovery of [the insurer's] files . . . would undoubtedly prejudice [the insured's] ability to defend itself against [plaintiffs'] original negligence claim."). Indeed, the purpose of Rule 26(b)(3) is to allow parties and their representatives to investigate claims and to prepare for trial without fear that their work – including their subjective impressions about the case – will be discoverable by the other side. *See Hickman* v. *Taylor*, 329 U.S. 495, 510-11 (1947).

Allowing plaintiffs to proceed against ProMutual while their underlying claims against ProMutual's insureds remain pending also could create an impossible dilemma for ProMutual:  while it might be in ProMutual's interests to disclose the contents of its claim file in the course of defending itself against plaintiffs' c. 93A claim, ProMutual could not do so without risking prejudice to its insureds. *See Mid-Century,* 901 S.W.2d at 752-753 (Tex. App. 1995) (insurer should not be required to choose between preserving privilege in order to further the defense of the underlying claim or waiving privilege in order to further the defense of the bad faith claim). *See also Nasta* v. *Premier Ins. Co.*, No. 03-J-0397, slip op. at 7 (Mass. App. Ct. Sept. 11, 2003) (Cohen, J., acting as single justice) (arbitrating underlying negligence claim and insurers' alleged

- 9 -

256900.1

bad faith failure to settle that claim together "may be prejudicial to the insurer, since the thought processes behind its decision not to settle would be aired at the same time that it was attempting to defend the underlying claims") (copy attached as Exhibit N). A stay will ensure that neither ProMutual nor its insureds are compromised in the defense of the claims against them, and that the plaintiffs are not unfairly advantaged in either case.

## CONCLUSION

For the reasons stated above, ProMutual respectfully requests that the Court stay all proceedings in this action until the plaintiffs' claims against Alice M. Daley, M.D. and PMG Physician Associates, P.C. are resolved by settlement or a final judgment and exhaustion of any appeals.

PROMUTUAL GROUP
By its attorneys,


/s/ Anne Robbins_____
Tamara S. Wolfson (BBO #544347)
Anne Robbins (BBO #561968)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Dated: October 12, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each other party by mail on October 12, 2005.

/s Anne Robbins_____

- 10 -

EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE. SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO:

JUDITH COELHO and
DANIEL COELHO.
Plaintiffs

v.

ALICE M. DALEY. M.D. and
PMG Physician Associates. P.C.
Defendants

### FIRST AMENDED COMPLAINT

#### COUNT I

1.    Plaintiff, Judith Coelho, is a resident of N. Falmouth, Commonwealth of Massachusetts.
Barnstable County.

2.    Plaintiff, Daniel Coelho. the husband of Judith Coelho, is a resident of N. Falmouth,
Commonwealth of Massachusetts, Barnstable County.

3.    Defendant, Alice M. Daley. M.D., at all times herein mentioned. was a physician licensed
to practice her profession in the Commonwealth of Massachusetts. and maintained an office in
Sandwich, Massachusetts, Barnstable County,

4.    At all times herein relevant, the Defendant, Alice M. Daley, M.D. represented and held
herself to be a medical doctor, skilled in the treatment of various illnesses and conditions and in
particular, represented to the Plaintiff that she was knowledgeable, competent and qualified to
diagnose and treat the Plaintiff's condition.

5.    On or about December 18, 2000 through September 9, 2002, the Plaintiff submitted
herself to the care and treatment of the Defendant, Alice M. Daley, M.D., who by her negligence,
carelessness, and lack of regard of the Plaintiff's health. care and well-being, treated the Plaintiff
in a manner resulting in her severe personal injuries.

6.    The injuries sustained by the Plaintiff were the direct and proximate result of the
carelessness. unskillfulness, negligence and improper care and treatment of the Defendant.
including. but not limited to the following:

a.    Defendant's misrepresentations to the Plaintiff that she was knowledgeable.
skillful and competent to diagnose and treat the Plaintiff's medical condition or about
December 18. 2000 through September 9. 2002;

b.    Defendant's failure to adequately and properly diagnose the Plaintiff's medical
condition on or about December 18. 2000 through September 9. 2002 and his failure to
prescribe proper and timely treatment for said condition;

c.    Defendant's failure to recognize. or have the knowledge to recognize her inability
to diagnose and treat the Plaintiff when the Defendant knew or should have known in the

exercise of due care, the foreseeable consequences of her inability to properly and skillfully provide the Plaintiff with acceptable medical and diagnostic services;

d.     Defendant's failure to possess or negligent failure to exercise the same degree of skill, training and care as is possessed by average qualified members of the medical profession taking into account advances in the profession.

e.     Defendant's failure to inform and to warn of the risks involved in or associated with the Plaintiff's condition and failure to inform and to warn about the treatment of said condition.

7.     As a direct and proximate result of the Defendant, Alice M. Daley, M.D.'s negligence, carelessness, and unskillfulness, the Plaintiff, Judith Coelho, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the Plaintiff, Judith Coelho, demands judgment against the Defendant, Alice M. Daley, M.D., for the above-described personal injuries, together with interest and costs.

## COUNT II

1.     The Plaintiff, Judith Coelho, repeats, realleges and incorporates fully herein Paragraphs One through Seven of Count I of this complaint as if each were set forth here in its entirety.

2.     On or about December 18, 2000 through September 9, 2002, average qualified members of the medical profession practicing the Defendant, Alice M. Daley; M.D.'s specialty knew or should have known of the risks, potential consequences and alternatives to the Defendant's choice of treatment of the Plaintiff, Judith Coelho.

3.     On or about December 18, 2000 through September 9, 2002, the Defendant, Alice M. Daley, M.D., knew or should have known of the risks, potential consequences and alternatives to the Defendant's choice of treatment of the Plaintiff.

4.     On or about December 18, 2000 through September 9, 2002, the Defendant, Alice M. Daley, M.D., did not inform the Plaintiff of the alternatives to and risks and potential consequences of the Defendant's choice of treatment of the Plaintiff.

5.     If the Defendant, Alice M. Daley, M.D., had informed the Plaintiff of the alternatives to and risks and potential consequences of the Defendant's choice of treatment of the Plaintiff, neither the Plaintiff nor a reasonable person in her position would have elected the Defendant's choice of treatment.

6.     The alternatives to and the risks and potential consequences of the Defendant's choice of treatment were material to a decision by the Plaintiff and a reasonable person in her position as to whether to undergo the Defendant's choice of treatment.

7.     As a direct and proximate result of the Defendant, Alice M. Daley, M.D.'s failure to inform the Plaintiff of the alternatives to and risks and potential consequences of the Defendant's treatment, the Plaintiff, Judith Coelho was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical and hospital care and treatment; has suffered and will continue to suffer great pain of body and

anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the Plaintiff, Judith Coelho demands judgment against the Defendant, Alice M. Daley, M.D. for the above-described personal injuries, together with interest and costs.

## COUNT III

1.     The Plaintiff, Judith Coelho, repeats, realleges, and incorporates fully herein Paragraph One through Seven of Count I, Paragraphs One through Seven of Count II of this complaint as if each were set forth here in its entirety.

2.     The Plaintiff, Daniel Coelho is the husband of Judith Coelho and is a resident of the Town of N. Falmouth, County of Barnstable, Commonwealth of Massachusetts

3.     As a direct and proximate result of the Defendant, Alice M. Daley M.D.'s negligence, and failure to obtain informed consent the Plaintiff, Daniel Coelho, has had severely restricted the benefit of the society, companionship, and consortium of his wife, all to his great damage.

WHEREFORE, the Plaintiff, Daniel Coelho, prays for judgment against the Defendant, Alice M. Daley, M.D. for the above-described personal injuries, together with interest and costs.

## COUNT IV

1.     The Plaintiffs, repeat, reallege, and incorporates fully herein Paragraph One through Seven of Count I, Paragraphs One through Seven of Count II, Paragraphs One through Three of Count III of this Complaint as if each were set forth here in its entirety.

2.     The Defendant, PMG Physician Associates, P.C., at all relevant times herein mentioned was a business entity in the State of Massachusetts, and maintained its primary business location in Sandwich, Massachusetts.

3.     At all times herein relevant, the Defendant PMG Physician Associates, P.C. held itself out to be a medical facility skilled in the treatment of various illnesses and conditions and, in particular, represented to the Plaintiff that it was knowledgeable, competent, and qualified to diagnose and treat the Plaintiff's condition.

4.     On or about December 18, 2000 through September 9, 2003 the Plaintiff, Judith Coelho submitted herself to the care and treatment of the Defendant, who by its negligence, carelessness, and lack of regard of the Plaintiff's health, care and well being, through its agents, assigns and employees treated the Plaintiff Judith Coelho in a manner resulting in severe personal injuries to her.

5.     The injuries suffered by the Plaintiff Judith Coelho were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment of the Defendant, including, but not limited to the following:

   a.     Defendant's misrepresentations to the Plaintiff that it was knowledgeable, skillful and competent to diagnose and treat the Plaintiff's medical condition on or about December 2000 through September 2002;

   b.     Defendant's failure to adequately and properly diagnose the Plaintiff's medical condition on or about December 2000 through September 2002 and its failure to prescribe proper and timely treatment for said condition;

   c.     Defendant's failure to recognize, or have the knowledge to recognize its inability to diagnose and treat the Plaintiff, when the Defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability to properly and skillfully provide the Plaintiff with acceptable medical and diagnostic services;

   d.     Defendant's failure to possess or negligent failure to exercise the same degree of skill, training, and care as is possessed by average qualified members of the medical profession taking into account advances in the profession.

   e.     Defendant's failure to inform and to warn of the risks involved in or associated with the Plaintiff's condition and failure to inform and to warn about the treatment of said condition.

6.     As a direct and proximate result of the Defendant, PMG Physician Associates, P.C.'s, negligence, carelessness, and unskillfulness, the Plaintiff, Judith Coelho was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activates; and his ability to enjoy life has been permanently adversely affected.

   WHEREFORE, the Plaintiff, Judith Coelho demands judgment against the Defendant PMG Physician Associates, P.C.. for the above-described personal injuries, together with interest and costs.

WHEREFORE. THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS.

Plaintiffs.
By their attorneys.

Kenneth M. Levine. BBO# 296850
Joyce Lederman Lichtenstein, BBO# 567427
ANNENBERG & LEVINE
370 Washington Street
Brookline, MA 02446
617-566-2700

DATED: 8/15/03

EXHIBIT B

# Commonwealth of Massachusetts
# SUPERIOR COURT
# Case Summary
# Civil Docket

## Coelho et al v Daley MD et al

Details for Docket: BACV2003-00228

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | BACV2003-00228 | **Caption:** | Coelho et al v Daley MD et al |
| **Filing Date:** | 04/14/2003 | **Case Status:** | Active |
| **Status Date:** | 05/18/2004 | **Session:** | Civil A- Barnstable Superior Court |
| **Lead Case:** | NA | **Case Type:** | Most |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/02/2005 |
| **Service Date:** | 07/13/2003 | **Disposition:** | 04/13/2006 |
| **Rule 15:** | 07/07/2004 | **Rule 12/19/20:** | 09/11/2003 |
| **Final PTC:** | 11/29/2005 | **Rule 56:** | 08/01/2005 |
| **Answer Date:** | 09/11/2003 | **Jury Trial:** | YES |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | BACV2003-00228 | **Caption:** | Coelho et al v Daley MD et al |
| **Filing Date:** | 04/14/2003 | **Case Status:** | Active |
| **Status Date:** | 05/18/2004 | **Session:** | Civil A- Barnstable Superior Court |
| **Lead Case:** | NA | **Case Type:** | Medical malpractice |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/02/2005 |
| **Service Date:** | 07/13/2003 | **Disposition:** | 04/13/2006 |
| **Rule 15:** | 07/07/2004 | **Rule 12/19/20:** | 09/11/2003 |
| **Final PTC:** | 11/29/2005 | **Rule 56:** | 08/01/2005 |
| **Answer Date:** | 09/11/2003 | **Jury Trial:** | YES |

## Parties Involved

7 Parties Involved in Docket: BACV2003-00228

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Daley MD | **First Name:** | Alice M |
| **Address:** | 90 Route 6A | **Address:** | |
| **City:** | Sandwich | **State:** | MA |
| **Zip Code:** | 02563 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Medical Associates of Sandwich | **First Name:** | |
| **Address:** | 90 Route 6A | **Address:** | |
| **City:** | Sandwich | **State:** | MA |
| **Zip Code:** | 02563 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | PMG Physician Associates PC | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Malprac trib attorney |
| **Last Name:** | Dale, Esq. | **First Name:** | John S. |
| **Address:** | P. O. Box 981 | **Address:** | |
| **City:** | Barnstable | **State:** | MA |
| **Zip Code:** | 02630 | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Malprac trib physician |
| **Last Name:** | Naparstek, M.D. | **First Name:** | Robert P. |
| **Address:** | 50 Strawberry Lane | **Address:** | |
| **City:** | Canton | **State:** | MA |
| **Zip Code:** | 02021 | **Zip Ext:** | 2463 |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Plaintiff |
|---|---|---|---|
| **Last Name:** | Coelho | **First Name:** | Daniel |
| **Address:** | | **Address:** | |
| **City:** | North Falmouth | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| **Party Involved:** | | **Role:** | Plaintiff |
|---|---|---|---|
| **Last Name:** | Coelho | **First Name:** | Judith |
| **Address:** | | **Address:** | |
| **City:** | North Falmouth | **State:** | MA |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

8 Attorneys Involved for Docket: BACV2003-00228

| **Attorney Involved:** | | **Firm Name:** | FICK01 |
|---|---|---|---|
| **Last Name:** | Watson | **First Name:** | Nancy L |
| **Address:** | 98 North Washington Street | **Address:** | Suite 500 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02114 | **Zip Ext:** | |
| **Telephone:** | 617-720-1515 | **Tel Ext:** | |
| **Fascimile:** | 617-720-1519 | **Representing:** | Daley MD, Alice M (Defendant |

| **Attorney Involved:** | | **Firm Name:** | ANNE01 |
|---|---|---|---|
| **Last Name:** | Sparacio | **First Name:** | Vivian M |
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline | **State:** | MA |
| **Zip Code:** | 02446 | **Zip Ext:** | |
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Judith (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|

| **Last Name:** | Levine | **First Name:** | Kenneth M |
|---|---|---|---|
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline Village | **State:** | MA |
| **Zip Code:** | 02445 | **Zip Ext:** | |
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Judith (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | ANNE01 |
|---|---|---|---|
| **Last Name:** | Lichtenstein | **First Name:** | Joyce Lederman |
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline | **State:** | MA |
| **Zip Code:** | 02446 | **Zip Ext:** | |
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Judith (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | |
|---|---|---|---|
| **Last Name:** | Levine | **First Name:** | Kenneth M |
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline Village | **State:** | MA |
| **Zip Code:** | 02445 | **Zip Ext:** | |
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Daniel (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | ANNE01 |
|---|---|---|---|
| **Last Name:** | Sparacio | **First Name:** | Vivian M |
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline | **State:** | MA |
| **Zip Code:** | 02446 | **Zip Ext:** | |
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Daniel (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | ANNE01 |
|---|---|---|---|
| **Last Name:** | Lichtenstein | **First Name:** | Joyce Lederman |
| **Address:** | 370 Washington Street | **Address:** | |
| **City:** | Brookline | **State:** | MA |
| **Zip Code:** | 02446 | **Zip Ext:** | |

| | | | |
|---|---|---|---|
| **Telephone:** | 617-566-2700 | **Tel Ext:** | |
| **Fascimile:** | 617-566-6144 | **Representing:** | Coelho, Daniel (Plaintiff) |
| **Attorney Involved:** | | **Firm Name:** | FOST05 |
| **Last Name:** | Foster | **First Name:** | Martin C |
| **Address:** | One Canal Street | **Address:** | |
| **City:** | Cambridge | **State:** | MA |
| **Zip Code:** | 02141 | **Zip Ext:** | |
| **Telephone:** | 617-252-3366 | **Tel Ext:** | |
| **Fascimile:** | 617-252-3366 | **Representing:** | PMG Physician Associates PC, (Defendant) |

## Calendar Events

13 Calendar Events for Docket: BACV2003-00228

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 05/13/2003 | 09:00 | Status: administrative | A | Event held as scheduled |
| 2 | 07/16/2003 | 09:00 | Status: Clerk Follow UP | A | Event held as scheduled |
| 3 | 09/08/2003 | 09:00 | Status: by clerk | A | Event held as scheduled |
| 4 | 04/14/2004 | 09:00 | Status: Clerk Follow UP | A | Event held as scheduled |
| 5 | 05/18/2004 | 10:00 | Malpractice tribunal | A | Event held as scheduled |
| 6 | 05/28/2004 | 09:00 | Status: Clerk Follow UP | A | Event held as scheduled |
| 7 | 06/01/2004 | 09:00 | Status: Clerk Follow UP | A | Event held as scheduled |
| 8 | 06/02/2004 | 09:00 | Status: Review Annual Fee | A | Event held as scheduled |
| 9 | 06/11/2004 | 09:00 | Status: Clerk Follow UP | A | Event held as scheduled |
| 10 | 09/03/2004 | 09:00 | Status: Review Annual Fee | A | Event held as scheduled |
| 11 | 10/06/2004 | 09:00 | Status: Review Annual Fee | A | Event held as scheduled |
| 12 | 02/24/2005 | 09:00 | Status: administrative | A | Event held as scheduled |
| 13 | 11/30/2005 | 14:00 | Conf: final pre-trial | A | |

## Full Docket Entries

47 Docket Entries for Docket: BACV2003-00228

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 04/14/2003 | 1 | COMPLAINT & with jury claim & civil action cover sheet |
| 04/14/2003 | | Origin 1, Type B06, Track A. |

| | | |
|---|---|---|
| 04/14/2003 | | FEE: paid in the amount of $410. |
| 05/13/2003 | 2 | SERVICE RETURNED: (2) (Defendants) made on May 9, 2003 |
| 06/06/2003 | 3 | NOTICE: appearance of Atty Nancy L Watson's for Alice M Daley MD |
| 06/06/2003 | 4 | ANSWER: Alice M Daley MD(Defendant) by Nancy L. Watson with claim of |
| 06/06/2003 | 4 | trial by jury |
| 07/16/2003 | | Case selected for review pursuant to ST.1996.c358,s.5 |
| 07/16/2003 | | ONE TRIAL review by Nickerson, Clerk-Magistrate, this court retains |
| 07/16/2003 | | jurisdiction of this case. |
| 08/25/2003 | 5 | WITHDRAWAL: Atty Vivian M Sparacio's for plaintiffs' |
| 09/05/2003 | 6 | MOTION:Plaintiff's, to amend complaint with affidavit of no opposition |
| 09/12/2003 | | Motion (P#6) ALLOWED (Richard T. Moses, Justice) Notices mailed |
| 09/12/2003 | | September 15, 2003 to JLL and NLW |
| 09/12/2003 | 7 | AMENDED COMPLAINT with jury claim |
| 09/22/2003 | 8 | ANSWER (amended complaint): Alice M Daley MD with jury claim by Nancy |
| 09/22/2003 | 8 | L Watson |
| 10/09/2003 | 9 | ANSWER: PMG Physician Associates PC(Defendant) to amended complaint |
| 10/09/2003 | 9 | with jury claim by Joan Eldridge |
| 10/22/2003 | 10 | WITHDRAWAL: Atty Joyce Lederman Lichtenstein's notice filed re: |
| 10/22/2003 | 10 | plaintiffs |
| 04/14/2004 | 11 | NOTICE: of Annual Civil Litigation Fee mailed to plaintiff's |
| 04/14/2004 | 11 | attorney, Kenneth M. Levine, on April 14, 2004. |
| 04/16/2004 | 12 | ORDER for medical malpractice tribunal on May 18, 2004 at 10:00 AM. |
| 05/18/2004 | 13 | Medical malpractice tribunal report: as to Alice M Daley MD that |
| 05/18/2004 | 13 | there is sufficient evidence to raise a legitimate question as to |
| 05/18/2004 | 13 | liability appropriate for judicial inquiry. (Gary A. Nickerson, |
| 05/18/2004 | 13 | Justice) Copies mailed July 01, 2004 |
| 05/18/2004 | 14 | Medical malpractice tribunal report: as to PMG Physician Associates |
| 05/18/2004 | 14 | PC that there is sufficient evidence to raise a legitimate question |
| 05/18/2004 | 14 | as to liability appropriate for judicial inquiry. (Gary A. Nickerson, |
| 05/18/2004 | 14 | Justice) Copies mailed July 01, 2004 |
| 05/18/2004 | | NOTICE: sent to board of registration in medicine as to all |
| 05/18/2004 | | defendants |
| 06/02/2004 | 15 | NOTICE of late fee due; Annual Civil Litigation Assessment Fee and |
| 06/02/2004 | 15 | late fee in amount of 130.00 mailed to plaintiff"s Kenneth M Levine |
| 06/02/2004 | 15 | on June 02, 2004 |
| 09/03/2004 | 16 | ORDER: of Dismissal Failure to Pay late fee |
| 09/09/2004 | | FEE: Annual Civil Litigation Fee and late fee in the sum of $160.00 |
| 09/09/2004 | | paid by the Plaintiff's attorney Kenneth M Levine on September 09, |
| 09/09/2004 | | 2004 |
| 02/14/2005 | | WITHDRAWAL of Appearance (temporary): Atty Kenneth M Levine's, filed |
| 02/14/2005 | | re: Judith Coelho, Daniel Coelho |

| 03/21/2005 | 18 | APPEARANCE: Atty Kenneth M Levine for plaintiffs' |
| 04/22/2005 | 19 | NOTICE: sent to appear for pre-trial conference on November 30, 2005, |
| 04/22/2005 | 19 | at 2:00 p.m. (Scott W. Nickerson, Clerk/Magistrate) notice mailed to |
| 04/22/2005 | 19 | MF, NW and KL on 4/22/05 |



35855

EXHIBIT C

September 2, 2005

**BY CERTIFIED MAIL NO. 7000 2870 0000 6601 5103**

Kenneth M. Levine, Esq.
Kenneth M. Levine & Associates
370 Washington Street
Brookline, MA 02446

> Re:    **Judith Coelho et al. v. Alice M. Daley, M.D., et al.**
> **ProMutual Claim No. 35855**

Dear Mr. Levine:

This is in response to your letter dated August 3, 2005 in which you purport to assert a demand pursuant to G.L. c. 93A and 176D that the Medical Professional Mutual Insurance Company ("ProMutual") settle the claims asserted by Judith and Daniel Coelho against ProMutual's insureds, Alice M. Daley, M.D. and PMG Physician Associates, P.C. Without waiving its rights to contest the sufficiency of your letter as an adequate demand letter under G.L. c. 93A, § 9, ProMutual responds as follows.

The Coelhos' claim is based upon the allegation that during an office visit on February 27, 2001, Dr. Daley palpated a peanut-sized nodule on Judith Coelho's left breast, but failed to order further diagnostic testing at that time resulting in the delay in the diagnosis of breast cancer. Dr. Daley denies the allegations against her. For the reasons discussed below, liability and damages are not reasonably clear at this time. Further, contrary to your assertions, ProMutual has appropriately investigated this claim based upon all available information and has not violated G.L. c. 93A or 176D.

An insurer is not obligated to settle a claim against its insured unless and until both the insured's liability and the claimant's damages are reasonably clear. See G.L. c. 176D, § 3(9)(f); *See also Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671 (1983). Further, as your letter acknowledges, in a matter alleging professional negligence, it is appropriate for an insurer to obtain opinions from experts to assess whether or not the insured's care and treatment of the claimant complied with the applicable standard of care and whether or not the insured's alleged acts or omissions caused the alleged injuries. *Van Dyke, supra; Mayer v. Medical Malpractice Joint Underwriting Association of Massachusetts*, 40 Mass. App. Ct. 266; *rev. denied*, 422 Mass. 1110 (1996). Those necessary expert reviews are pending.

In order to obtain final and definitive expert reviews, it was necessary to first obtain all of Ms. Coelho's medical records. ProMutual promptly made efforts to obtain the medical records necessary for the expert reviews. By a letter dated May 20, 2003, shortly after ProMutual was notified of the Coelhos' suit, I requested that you provide me with all of Mrs. Coelho's medical records. You did

2282:44.1



**ProMutual**Group®

101 Arch Street, P.O. Box 55178       Phone:   617.330.1755
Boston, MA 02205-5178                Toll Free: 800.225.6168
www.promutualgroup.com               Fax:     617.330.1748

Kenneth M. Levine, Esq.
September 2, 2005
Page 2

not, however, produce any records in response to that request. On or abut July 14, 2003, counsel for Dr. Daley served document requests on the plaintiffs seeking, among other things, all of Mrs. Coelho's relevant medical records. We understand that you did not produce any responsive documents or otherwise even respond to the document requests. As a result, defense counsel were required to subpoena medical records from the numerous health care providers whose identities could be established.

Further, as you know, the depositions of the parties were only recently completed. Because of the disputed issues of fact, the deposition of Mrs. Coelho was also needed for an assessment of liability, as well as for assessing damages. We understand that because Mr. and Mrs. Coelho had moved to Florida, as a courtesy, defense counsel deferred scheduling their depositions until it was convenient for them to return to Massachusetts. Similarly, you did not depose Dr. Daley until June of this year. As you are aware from that deposition, Dr. Daley is adamant that she instructed Mrs. Coelho to have the nodule examined by ultrasound and that she did not deviate from the applicable standard of care. Although you contend that Dr. Daley is not credible, that contention does not render liability reasonably clear.

Accordingly, your assertions that ProMutual failed promptly to investigate this claim, as well as your unwarranted speculation about the status of the expert reviews, are without merit. As the Supreme Judicial Court has noted, "[i]nsurers must be given the time to investigate claims thoroughly to determine their liability. Our decisions interpreting the obligations contained within G.L. c. 176D, § 3(9), in no way penalize insurers who delay in good faith when liability is not clear and requires further investigation." *Clegg v. Butler*, 424 Mass. 413, 421 (1997). *See also, Tyler v. Safety Insurance Co.*, Suffolk superior Court No. 99-03024 (Memorandum of Decision and Order on Findings and Rulings, April 30, 2002) (delay in making offer while insurer consulted with medical experts to investigate whether an automobile accident might have been caused by a medical condition rather than the driver's negligence was reasonable).

There also are questions with respect to the extent of Ms. Coelho's damages that require expert review. Although you have asserted that Mrs. Coelho's diagnosis is "dire," we note that fortunately, Mrs. Coelho has remained cancer free for over two years after completing treatment. At her deposition on June 2, 2005, Ms. Coelho indicated that her oncologist, Dr. Beverly Moy, is optimistic about the prognosis, and that she expected that at her next six-month visit with Dr. Moy in July, that she would be put on an annual follow-up schedule. There also are issues with respect to the staging of the cancer. Although your June 28, 2005 letter asserts that the cancer was stage III, the available medical records all indicate that the cancer was determined to be Stage IIB. If you are relying on a particular record or expert opinion for your assertion, please provide that to me. In any event, the issues of the stage of the cancer and Ms. Coelho's prognosis are among the issues that the pending expert reviews will address.

2282441



**ProMutual**Group®

101 Arch Street, P.O. Box 55178    Phone:  617.330.1755
Boston, MA 02205-5178             Toll Free: 800.225.6168
www.promutualgroup.com           Fax:    617.330.1748

Kenneth M. Levine, Esq.
September 2, 2005
Page 3


For the reasons summarized above, there has been no violation of G.L. c. 93A or 176D and ProMutual is not required to make an offer of settlement at this time. As set forth above, ProMutual is continuing its investigation and assessment of this claim and expert reviews are pending. We fully share your interest in determining as soon as is practical whether or not this matter can be resolved by settlement. We will make all reasonable efforts to obtain the pending reviews as expeditiously as possible. As I trust you can appreciate, however, the medical experts reviewing this matter are practicing professionals and ProMutual cannot control the amount of time it will take for the experts to complete their reviews. Please be assured, however, that upon receipt of the pending reviews, if a settlement offer is warranted, we will promptly make a reasonable offer of settlement.

If you would like to discuss this matter further or if there is any additional information that you believe ProMutual should consider, please let me know.


Very truly yours,

Jeanne Farulla
Senior Claim Representative


cc:    Nancy Watson, Esq.

Medical Professional Mutual Insurance Company  |  ProSelect Insurance Company  |  ProSelect National Insurance Company, Inc.

Addendum

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No. 84-0138

JACQUELYN R. GROSS, ET AL.

vs.

LIBERTY MUTUAL INSURANCE COMPANY
and
CNA INSURANCE COMPANIES.

MEMORANDUM & ORDER

The petitioner here is CNA Insurance Companies
(CNA). It seeks relief under G. L. c. 231, § 118,
from an order of a Superior Court judge denying a
protective order and, in effect, requiring it to make
discovery from files involving pending litigation.

The action against CNA, brought under G. L. c.
93A, is for failure to make a reasonable offer of
settlement in a tort case. CNA has made an offer of
$40,000. The plaintiffs have rejected this offer and
say that an offer of anything less than the policy
limits ($100,000) is not reasonable.

The case raises interesting issues concerning the
degree to which the lawyer-client privilege may be
penetrated by a party alleging unfair practice by
an insurance company.

In the instant case, however, those questions
have been brought forward prematurely. The significant
fact is that the liability of CNA's insured, and the
damages flowing from that liability, have yet to be

ascertain . . . uld there be a verdi.. .. . ver of
CNA's insured, should there be a verdict within range
of the $40,000 offered, or should there be a settlement
within the range of the $40,000 offered, a claim of
unfair settlement could scarcely be made out. Without
intimating that the plaintiff here may properly have
access to CNA's files should the verdict in the
underlying suit be far in excess of CNA's best offer,
I conclude that, in any event, there ought to be no
access to those files until the underlying civil action
(Essex Superior Court Civil No. 81-2314) has been
determined.

Accordingly, I vacate so much of the order of the
Superior Court judge as required CNA to identify and
make available to the plaintiffs every document in
CNA's control which concerns the settlement value and
likelihood of recovery at trial by the plaintiffs
against CNA's insureds and the settlement value and
likelihood of recovery at trial of the Straubs against
the insureds. Nor shall CNA be required to identify
the persons involved with the valuation of the Gross
and Straub claims. Nor shall CNA be required to
divulge what persons CNA consulted to determine the
settlement value or probability of recovery at trial
on the Gross and Straub claims. Nor shall CNA be
required to state what it considers the likelihood
of recovery by the plaintiffs against the insureds.
Nor shall CNA at this time be required to respond to

interrogatories 8, 9, 10, 11, 12, 14, and 15. As to
interrogatory number 13, CNA shall answer what its
record retention policy is. It goes without saying that
CNA is not to destroy any material now in its files
and shall retain such material for six years following
final determination of the tort suit or as a court
otherwise orders. A copy of this order shall be
placed in those files of CNA affected by this order.

By the Court, (Kass, J.),

Assistant Clerk

Entered: April 24, 1984.

-3-

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PANTUCKET MUTUAL INSURANCE COMPANY.

MEMORANDUM AND ORDER

It seems apparent that once a tort claim is reported by an insured to the insurance company for a defense and payment if there is liability, the file material accumulated by the insurance company is largely in anticipation of litigation.

It seems equally apparent to me, as set forth in an earlier memorandum and order on the subject in Gross v. Liberty Mut. Ins. Co. and others, single justice docket no. 84-0138, that to authorize discovery in an unfair settlement claim before the underlying claim has been established is to get the cases in the wrong order. The argument that the situation lies otherwise if the injured party has not actually filed a claim in court is unpersuasive. There may be no complaint in court, but there is an underlying claim and, as the insurance company has argued, the distinction would encourage postponement of filing the underlying injury claim in favor of an unfair settlement claim against the insurance company.

I shall respond to the petition with a protective

order along the lines requested.

If I may be permitted an aside, it seems extraordinary that the insurance company in its memorandum suggests questions in the case about liability. This is a dog bite case. A child has been injured. Absent the most extraordinary circumstances, there is going to be liability and the question is how much are the damages. One would expect conscientious counsel to evaluate the claim and to give the company the benefit of its advice. In terms of the litigation posture of the insurance company, I am struck by the wholly routine nature of its answer to the plaintiffs' complaint against the insurance company.

Upon examination of the papers, which included the helpful memorandum filed by the plaintiff in Superior Court, it is ordered that until the underlying personal injury claim is settled or litigated to judgment, the insurance company need not produce memoranda and notes of its investigators or its lawyers in connection with the concern the claim of Jennifer Belcher against Rodney and Anne Lockyer. The plaintiff may have access to other material.

By the Court (Kass, J.),

Nancy Truck Foley
Clerk

Entered: September 27, 1989.

CGM    WEALTH OF MASSACHUSETTS
       APPEALS COURT

OCT   6 1989

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY

MOTION FOR RECONSIDERATION

Plaintiff Jennifer Belcher respectfully requests this
Honorable Court to reconsider its decision of September 27,
1989 for the following reasons:

1)  The issue below was not whether discovery can be
authorized in an unfair settlement claim before the underlying
claim has been established;

2)  The issue below was whether or not the defendant met
its burden of proof in claiming work product and
attorney-client privileges;

3)  The defendant failed to meet its burden of proof as
it produced no evidence in support, and accordingly, the trial
court ruled against the defendant on that issue;

4)  The attached case of <u>Sham v. Hyannis Heritage House
Hotel</u>, 118 F.R.D. 24, 26 (D.Mass. 1987) is on point with this
issue;

5)  The attached case of <u>D'Angelo v. General Accident</u>

Ins. Co., single justice docket no. 86-J-24, holds for the plaintiff and is closer to the facts in this action than Gross v. Liberty Mut. Ins. Co., single justice docket no. 84-0118.

Plaintiff respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 in view of the foregoing and affirm the order of the trial court.

APPEALS COURT

Upon consideration of the motion r reconsideration filed by the plain-ff (paper #3), the order of September , 1989 is to stand except that the rds "the concern" are struck from a last paragraph. The protective ler is narrow.                    Kass, J.

ber 6, 1989

EST: _____ Asst. Clerk

Date:   October 5, 1989

Respectfully submitted,
By her attorneys,
HAMEL, WAXLER, ALLEN & COLLINS

_____
MICHAEL J. UNDERHILL
7 North Sixth Street
New Bedford, MA 02740
(508) 993-8000
BBO# 545232

Certificate of Service

I certify that a copy of the Motion For Reconsideration was forwarded to the attorney of record, Joseph F. Strumski, Jr., Esq., Morrison, Mahoney & Miller, 700 Pleasant Street, New Bedford, MA 02740, by first class mail, postage prepaid, on this 5th day of October, 1989.

_____
Michael J. Underhill

jbai

EXHIBIT F

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

98-J-65

ANDREW KAI KAI

<u>vs</u>.

JANIQUE KIM-SON, ET ALS

<u>ORDER</u>

This is a petition for interlocutory relief pursuant to G. L. c. 231, section 118.  The defendants moved to sever and stay plaintiff's Chapter 93A and Chapter 176D claims against the defendant insurer from plaintiff's negligence claims against the individual defendants (the insureds).

Such a motion is routinely allowed, if only to prevent discovery of the insurer's impressions of the case based upon legal theory and privileged communications, and thereby prevent interference with the insureds' right to be adequately defended. The plaintiff presented no reason to the trial court to deviate from what has become established practice.  The trial court's order denying defendants Martin S. Son's and USAA casualty Insurance Company's motion to sever and stay is vacated.  An

endorsement is to enter on said motion that it is allowed.

<u>So ordered.</u>

By the Court (Spina, J.)

Ashley Aheson
Clerk

Entered: February 11, 1998

2

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

93-J-923

ROYAL INSURANCE COMPANY

vs.

STONEHAM AUTO BODY & SERVICE, INC., ET AL.

ORDER

The relief requested in the petition filed December 6, 1993, by Royal Insurance Company is allowed. Consistent with prior orders in the single justice session of the Court, it is ordered that all discovery against Royal Insurance Company with respect to the 93A/176D claim until the underlying liability claim is resolved.

The defendants' motion for sanctions and attorney's fees is denied.

By the Court (Gillerman, J.),

Clerk

Entered: December 7, 1993.

EXHIBIT H

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: 1:04-cv-12012-DPW

Hanrahan et al v. NCMIC Insurance Company et al
Assigned to: Judge Douglas P. Woodlock
Case in other court: Norfolk County Superior Court,
                    NOCV2004-01339-A
Cause: 28:1441 Petition for Removal- Insurance Contract

Date Filed: 09/16/2004
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

## Plaintiff

**Dennis Michael Hanrahan**

represented by **William J. Ruotolo**
Law Office of William J. Ruotolo
Attorneys & Counselors at Law
2123 Warwick Avenue
Warwick, RI 02889
401-739-7404
Fax: 401-633-6381
Email: wjr@ruotololaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Plaintiff

**Janice Hanrahan**

represented by **William J. Ruotolo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**NCMIC Insurance Company**

represented by **Anne Robbins**
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199
617-267-3236
Fax: 617-227-4420
Email: arobbins@palmerdodge.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tamara S. Wolfson**
Palmer & Dodge, LLP
111 Huntington Avenue
Boston, MA 02199
617-239-0156
Fax: 617-227-4420
Email: twolfson@palmerdodge.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NCMIC Insurance Services, Inc.**                represented by **Anne Robbins**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tamara S. Wolfson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2004 | 1 | NOTICE OF REMOVAL by NCMIC Insurance Company, NCMIC Insurance Services, Inc. from Norfolk Superior Court, case number NOCV2004-01339-A. $ 150, receipt number 58752. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Civil Cover Sheet)(Rynne, Michelle) (Entered: 09/21/2004) |
| 09/16/2004 | | If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Alexander. (Rynne, Michelle) (Entered: 09/21/2004) |
| 09/16/2004 | 2 | CORPORATE DISCLOSURE STATEMENT by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 09/21/2004) |
| 09/20/2004 | 3 | NOTICE of Scheduling Conference: Scheduling Conference set for 10/26/2004 at 2:30 PM in Courtroom 1 before Judge Douglas P. Woodlock. (Greenberg, Rebecca) (Entered: 09/21/2004) |
| 09/21/2004 | 4 | ANSWER to Complaint by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 09/24/2004) |
| 10/04/2004 | 5 | STATE COURT Record NCMIC Insurance Company served on 8/24/2004, answer due 9/13/2004; NCMIC Insurance Services, Inc. served on 8/24/2004, answer due 9/13/2004. (Rynne, Michelle) (Entered: 10/08/2004) |
| 10/13/2004 | 6 | MOTION to Vacate default (entered in state court) by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/18/2004) |
| 10/13/2004 | 7 | MEMORANDUM in Support re 6 MOTION to Vacate default (entered in state court) filed by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/18/2004) |
| 10/13/2004 | 8 | AFFIDAVIT of Tamara S. Wolfson re 6 MOTION to Vacate default (entered in state court) by NCMIC Insurance Company, NCMIC |

| | | Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/18/2004) |
|---|---|---|
| 10/18/2004 | | Mail Returned as Undeliverable. Mail sent to Richard Hall. (Rynne, Michelle) (Entered: 10/21/2004) |
| 10/19/2004 | 9 | Opposition re 6 MOTION to Vacate *Default Judgments* filed by Dennis Michael Hanrahan, Janice Hanrahan. (Ruotolo, William) (Entered: 10/19/2004) |
| 10/20/2004 | 10 | MOTION to Stay all proceedings until resolution of the underlying tort suit and MOTION to Dismiss claims under G.L. C. 176D by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/22/2004) |
| 10/20/2004 | 11 | MEMORANDUM in Support re 10 MOTION to Stay all proceedings until resolution of the underlying tort suit and MOTION to Dismiss claims under G.L. C. 176D filed by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/22/2004) |
| 10/20/2004 | 12 | JOINT STATEMENT re scheduling conference. (Rynne, Michelle) (Entered: 10/22/2004) |
| 10/20/2004 | 13 | CERTIFICATION pursuant to Local Rule 16.1 by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/22/2004) |
| 10/22/2004 | 14 | RESPONSE to Motion re 10 MOTION to Dismiss MOTION to Stay filed by Dennis Michael Hanrahan, Janice Hanrahan. (Ruotolo, William) (Entered: 10/22/2004) |
| 10/22/2004 | 15 | CERTIFICATE OF CONSULTATION *16.1 of the local rules* by William J. Ruotolo on behalf of Dennis Michael Hanrahan, Janice Hanrahan. (Ruotolo, William) (Entered: 10/22/2004) |
| 10/22/2004 | 16 | REPLY to Response to Motion re 10 MOTION to Dismiss MOTION to Stay *Plaintiffs' Opposition* filed by Dennis Michael Hanrahan, Janice Hanrahan. (Ruotolo, William) (Entered: 10/22/2004) |
| 10/26/2004 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 6 Motion to Vacate, denying 10 Motion to Dismiss, granting 10 Motion to Stay. (Greenberg, Rebecca) (Entered: 10/26/2004) |
| 10/26/2004 | | Electronic Clerk's Notes for proceedings held before Judge Douglas P. Woodlock : Scheduling Conference held on 10/26/2004. motion to vacate default from state court is Allowed; motion to dismiss denied; motion to Stay is allowed. See Order for further details. (Court Reporter Pam Owens.) (Greenberg, Rebecca) Modified on 10/26/2004 (Greenberg, Rebecca). (Entered: 10/26/2004) |
| 10/26/2004 | 17 | Judge Douglas P. Woodlock : ORDER entered SCHEDULING ORDER: the motion to Stay discovery is Allowed. The case is STAYED pending a judgment in the underlying medical malpractice suit. The parties shall file a Joint STATUS REPORT every 3 months, starting JANUARY 26, 2005 |

| | | with respect to the status of the underlying case.(Greenberg, Rebecca) (Entered: 10/26/2004) |
|---|---|---|
| 10/26/2004 | 18 | MOTION for Leave to File reply by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Rynne, Michelle) (Entered: 10/28/2004) |
| 10/28/2004 | | Judge Douglas P. Woodlock : Electronic ORDER entered granting 18 MOTION for Leave to File reply by NCMIC Insurance Company, NCMIC Insurance Services, Inc. (Greenberg, Rebecca) (Entered: 10/28/2004) |
| 01/25/2005 | 19 | STATUS REPORT *First Joint* by NCMIC Insurance Services, Inc., Dennis Michael Hanrahan, Janice Hanrahan, NCMIC Insurance Company. (Robbins, Anne) (Entered: 01/25/2005) |
| 04/25/2005 | 20 | STATUS REPORT *Second Joint* by NCMIC Insurance Services, Inc., NCMIC Insurance Company. (Robbins, Anne) (Entered: 04/25/2005) |
| 07/25/2005 | 21 | STATUS REPORT *Third Joint* by NCMIC Insurance Services, Inc., NCMIC Insurance Company. (Robbins, Anne) (Entered: 07/25/2005) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/03/2005 11:17:31 | | |
| **PACER Login:** pd0005 | **Client Code:** | 18336-1511-0751 |
| **Description:** | Docket Report **Search Criteria:** | 1:04-cv-12012-DPW |
| **Billable Pages:** 2 | **Cost:** | 0.16 |

CLOSED, STAYED

EXHIBIT I

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:02-cv-12274-PBS

Rurak, et al v. Medical Professional
Assigned to: Judge Patti B. Saris
Demand: $0
Cause: 28:1332 Diversity-Property Damage

Date Filed: 11/22/2002
Jury Demand: Defendant
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

**Plaintiff**

**Thaddeus Rurak**

represented by **Joseph J. Wadland**
Wadland & Ackerman
Two Dundee Park
Suite 304
Andover, MA 01810-3726
978-474-8880
Fax: 978-474-8881
Email: jwadland@wadacklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lynne Rurak**

represented by **Joseph J. Wadland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Medical Professional Mutual
Insurance Company, The**
*also known as*
Promutual

represented by **Peter C. Knight**
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
617-439-7500
Fax: 617-342-4928
Email: pknight@morrisonmahoney.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tory A. Weigand**
Morrison, Mahoney & Miller, LLP
1500 Main St., Suite 2400
P.O. Box 15387

Springfield, MA 01115-5387
617-737-8827
Fax: 617-342-4947
Email: tweigand@mail.mm-m.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**MD Ronald Teitler**                  represented by **Edward T. Hinchey**
Sloane & Walsh
Three Center Plaza
Boston, MA 02108
617-523-6010 x 331
Fax: 617-227-0927
Email: ehinchey@sloanewalsh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**MD Ronald Teitler**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/22/2002 | 1 | Complaint filed. Case assigned to Judge: Patti B. Saris. Receipt #: 43407 Amount:$ 150.00. Fee Status: pd (ms) (Entered: 11/25/2002) |
| 01/06/2003 | 2 | Return of service executed as to Medical Professional with service on 12/30/02 filed. Answer due on 3:30 5/1/02 (ms) (Entered: 01/07/2003) |
| 01/17/2003 | 3 | Motion by Medical Professional to extend time to 2/7/03 to file a responsive pleading , filed. (ms) (Entered: 01/21/2003) |
| 01/17/2003 | 4 | Certificate of Consultation re: [3-1] motion to extend time to 2/7/03 to file a responsive pleading , filed. (ms) (Entered: 01/21/2003) |
| 01/21/2003 | | Judge Patti B. Saris. Endorsed Order entered granting [3-1] motion to extend time to 2/7/03 to file a responsive pleading, set answer due for 2/7/03 for Medical Professional cc/cl. [EOD Date 1/27/03] (ms) (Entered: 01/27/2003) |
| 01/23/2003 | 5 | Response by Thaddeus Rurak, Lynne Rurak in opposition to [3-1] motion to extend time to 2/7/03 to file a responsive pleading, filed. (ms) (Entered: 01/23/2003) |
| 02/07/2003 | 6 | Motion by Medical Professional to dismiss , or in the alternative to stay Supporting memorandum of law , filed. (ms) (Entered: 02/07/2003) |
| 02/10/2003 | 7 | Judge Patti B. Saris. Notice of Motion Hearing: Motion hearing set for 2:00 3/21/03 for [6-1] motion to dismiss, set for 2:00 3/21/03 for [6-2] motion to stay cc/cl. (ms) (Entered: 02/11/2003) |
| 02/10/2003 | 8 | Judge Patti B. Saris. Notice of Scheduling conference: set scheduling |

|            |    | conference for 2:00 3/21/03 cc/cl. (ms) (Entered: 02/11/2003) |
|------------|----|--------------------------------------------------------------|
| 02/10/2003 | 9  | Judge Patti B. Saris. Procedural Order entered re: Scheduling conference. cc/cl [EOD Date 2/11/03] (ms) (Entered: 02/11/2003) |
| 02/21/2003 | 10 | Response by Thaddeus Rurak, Lynne Rurak in opposition to [6-1] motion to dismiss, [6-2] motion to stay , filed. (ms) (Entered: 02/25/2003) |
| 03/17/2003 | 11 | Joint statement by Thaddeus Rurak, Lynne Rurak, Medical Professional, re: LR 16.1(D), filed. (ms) (Entered: 03/18/2003) |
| 03/17/2003 | 12 | Rule 16.1 Certification filed by Thaddeus Rurak . (ms) (Entered: 03/18/2003) |
| 03/20/2003 | 15 | Motion by Medical Professional for leave to file supplemental memorandum in support of it's motion to dismiss/stay , filed. (ms) (Entered: 03/24/2003) |
| 03/21/2003 |    | Motion hearing re: [6-1] motion to dismiss Motion hearing held, [6-2] motion to stay Motion hearing held (ms) (Entered: 03/21/2003) |
| 03/21/2003 | 13 | Judge Patti B. Saris. Clerk's Notes: re: motion to dism hrg [6-1] motion to dismiss taken under advisement, [6-2] motion to stay taken under advisement Court Reporter: Janet Komarski (ms) (Entered: 03/21/2003) |
| 03/21/2003 | 14 | Judge Patti B. Saris. Order of reference entered for Alternative Dispute Resolution. Referred to: ADR for: Mediation (ms) (Entered: 03/21/2003) |
| 04/16/2003 | 17 | Notice of assignment of ADR Provider issued. Assigned to: Chief Mag Judge Bowler for: ADR (ms) (Entered: 04/18/2003) |
| 04/25/2003 | 18 | Ch. Mag Judge Marianne B. Bowler. Notice of ADR conference: set ADR Conference for 10:00 5/14/03 cc/cl. (ms) (Entered: 04/25/2003) |
| 05/14/2003 | 20 | Report by Marianne B. Bowler of Alternative Dispute Resolution proceedings. The case was: no mediation was conducted (ms) (Entered: 05/15/2003) |
| 05/15/2003 |    | Case no longer referred to ADR. (ms) (Entered: 05/15/2003) |
| 05/19/2003 | 21 | Judge Patti B. Saris : MEMORANDUM AND ORDER entered re: [6] Motion to Dismiss, [6] Motion to Stay: After hearing, the motion to dismiss is DENIED in part and ALLOWED in part. The defts motion to dismiss is allowed with respect to the claims of Mass Gen. L. Ch. 176D 3 (9)(g) and intentional infliction of emotional distress. otherwise it is denied. (Simeone, Maria) (Entered: 05/20/2003) |
| 05/27/2003 | 24 | MOTION to Compel production of documents by Lynne Rurak, Thaddeus Rurak.(Simeone, Maria) (Entered: 05/30/2003) |
| 05/29/2003 | 23 | MEMORANDUM in Support re 22 MOTION for Sanctions filed by Lynne Rurak, Thaddeus Rurak. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3)(Simeone, Maria) (Entered: 05/30/2003) |
| 05/30/2003 | 22 | MOTION for Sanctions by Lynne Rurak, Thaddeus Rurak.(Simeone, |

| | | Maria) (Entered: 05/30/2003) |
|---|---|---|
| 05/30/2003 | 25 | MEMORANDUM in Support re 24 MOTION to Compel filed by Lynne Rurak, Thaddeus Rurak. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3Exhibit C# 4 Exhibit D# 5)(Simeone, Maria) (Entered: 05/30/2003) |
| 06/06/2003 | 26 | ANSWER to Complaint with Jury Demand by Medical Professional Mutual Insurance Company, The.(Simeone, Maria) (Entered: 06/09/2003) |
| 06/09/2003 | 27 | Letter to Mr. Alba from Joseph J. Wadland re: answer to motion to compel. (Simeone, Maria) (Entered: 06/11/2003) |
| 06/11/2003 | 28 | MEMORANDUM in Opposition re 22 MOTION for Sanctions filed by Medical Professional Mutual Insurance Company, The. (Simeone, Maria) (Entered: 06/12/2003) |
| 06/11/2003 | 29 | MEMORANDUM in Opposition re 24 MOTION to Compel filed by Medical Professional Mutual Insurance Company, The. (Simeone, Maria) (Entered: 06/12/2003) |
| 06/13/2003 | 30 | Judge Patti B. Saris : ORDER OF REFERRENCE entered. Referring to Magistrate Judge Lawrence Cohen, Motion 22 MOTION for Sanctions filed by Thaddeus Rurak, Lynne Rurak, 24 MOTION to Compel filed by Thaddeus Rurak, Lynne Rurak.(Alba, Robert) (Entered: 06/13/2003) |
| 06/13/2003 | 31 | Judge Patti B. Saris : ORDER entered REFERRING MOTION: 22 MOTION for Sanctions filed by Thaddeus Rurak, Lynne Rurak, 24 MOTION to Compel filed by Thaddeus Rurak, Lynne Rurak(Simeone, Maria) (Entered: 06/18/2003) |
| 06/19/2003 | 32 | MOTION to Intervene by Ronald Teitler.(Simeone, Maria) (Entered: 06/19/2003) |
| 06/30/2003 | 33 | Letter from Joseph J. Wadland, Esq., dated 6/17/03, to COHEN, M.J., calling MJ's attention to order of SARIS, D.J., of 5/19/03, on motion to dismiss, in relation to referred motion to compel; fax requested by clerk. (Hayes, Ellen) (Entered: 07/01/2003) |
| 06/30/2003 | 34 | Judge Lawrence P. Cohen : PROCEDURAL ORDER entered setting Hearing on:24MOTION to Compel, 22MOTION for Sanctions for 8/06/03 at 2:00 p.m.(Welch, Ruth) (Entered: 07/03/2003) |
| 07/03/2003 | 35 | RESPONSE to Motion re 32 MOTION to Intervene filed by Lynne Rurak, Thaddeus Rurak. (Simeone, Maria) (Entered: 07/07/2003) |
| 07/07/2003 | 36 | MOTION for Leave to File reply brief by Ronald Teitler.(Simeone, Maria) (Entered: 07/08/2003) |
| 07/07/2003 | | Judge Patti B. Saris : Electronic ORDER entered granting 32 Motion to Intervene. Allowed only with respect to asserting a claim of privilege (Simeone, Maria) (Entered: 07/10/2003) |
| 07/09/2003 | | Judge Patti B. Saris : ELectronic ORDER entered denying 36 Motion for Leave to File reply brief. Denied. I have already ruled. (Simeone, Maria) |

| | | |
|---|---|---|
| | | (Entered: 07/10/2003) |
| 08/06/2003 | | ELECTRONIC Clerk's Notes:Hearing held before COHEN, M.J., on 22 MOTION for Sanctions filed by Thaddeus Rurak, Lynne Rurak, and 24 MOTION to Compel filed by Thaddeus Rurak, Lynne Rurak; #24 taken under advisement; #22 DENIED. (Attys. Wadland, Knight, Hinchey) (Tape #2003-45.) (Hayes, Ellen) (Entered: 08/06/2003) |
| 08/11/2003 | 37 | Judge Lawrence P. Cohen : ORDER entered denying 22 Motion for Sanctions, and allowing in limited part and otherwise denying 24 Motion to Compel. (Welch, Ruth) (Entered: 08/11/2003) |
| 08/19/2003 | 38 | Request for Scheduling Conference by Lynne Rurak, Thaddeus Rurak. (Simeone, Maria) (Entered: 08/21/2003) |
| 08/19/2003 | 39 | Objection to 37 Order on Motion for Sanctions, Order on Motion to Compel. (Simeone, Maria) (Entered: 08/21/2003) |
| 08/22/2003 | | Judge Patti B. Saris : Electronic ORDER entered granting 38 Motion for Hearing. Allowed. Parties shall be engaged in discovery forthwith. (Simeone, Maria) (Entered: 09/04/2003) |
| 08/25/2003 | 40 | Defendant Medical Professional Mutual Insurance Corporation's Response to 39 Rule 72 Objection to Magistrate's Order Dated August 11, 2003.c/s (Edge, Eugenia) (Entered: 08/28/2003) |
| 09/02/2003 | 41 | NOTICE of Hearing and Scheduling conference:Hearing on Objections to 8/11/03 order of Mag. Judge Cohen set for 10/15/2003 04:00 PM in Courtroom 13 before Judge Patti B. Saris. Scheduling Conference set for 10/15/2003 04:00 PM in Courtroom 13 before Judge Patti B. Saris. (Simeone, Maria) (Entered: 09/04/2003) |
| 10/15/2003 | | Electronic Clerk's Notes for proceedings held before Judge Patti B. Saris: Hearing on Objection to #37 Magistrates Report and Recommendation andScheduling Conference held on 10/15/2003. Court stays discovery as to Rurak / Pro Mutual. Court sets discovery and trial schedule. Scheduling Order to issue. (Court Reporter Marie Cloonan.) (Alba, Robert) (Entered: 10/15/2003) |
| 10/15/2003 | | Judge Patti B. Saris :Electronic ORDER entered re 39 Objection. Denied without prejudice. This action is stayed pending resolution of the medical malpractice action to be filed.(Simeone, Maria) (Entered: 10/17/2003) |
| 10/20/2003 | | Judge Patti B. Saris : ORDER entered Case stayed.(Simeone, Maria) (Entered: 10/20/2003) |
| 10/20/2003 | | Civil Case Terminated. (Simeone, Maria) (Entered: 10/20/2003) |
| 10/21/2003 | 42 | Letter from Joseph J. Wadland inquiring as to the closing of this case re electronic order allowing the motion to stay the case. The case was stayed and closed as a formality.(Simeone, Maria) (Entered: 10/23/2003) |
| 10/23/2003 | 43 | MOTION for Clarification re: Electronic Order, Case Stayed, Terminated Case by Lynne Rurak, Thaddeus Rurak.(Simeone, Maria) (Entered: |

| | | 10/24/2003) |
|---|---|---|
| 10/29/2003 | | Judge Patti B. Saris : Electronic ORDER entered entered 43 Motion for Clarification. This is an administrative closing. (Simeone, Maria) (Entered: 10/30/2003) |

<table>
<tr><td colspan="4" align="center"><strong>PACER Service Center</strong></td></tr>
<tr><td colspan="4" align="center"><strong>Transaction Receipt</strong></td></tr>
<tr><td colspan="4" align="center">10/03/2005 11:10:50</td></tr>
<tr><td><strong>PACER Login:</strong></td><td>pd0005</td><td><strong>Client Code:</strong></td><td>18336-1511-0751</td></tr>
<tr><td><strong>Description:</strong></td><td>Docket Report</td><td><strong>Search Criteria:</strong></td><td>1:02-cv-12274-PBS</td></tr>
<tr><td><strong>Billable Pages:</strong></td><td>3</td><td><strong>Cost:</strong></td><td>0.24</td></tr>
</table>

EXHIBIT J

6-17-96 F"

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 96-2019-D

ANTONIO G. ARMATA, Individually
and as Administrator of the Estate of
DOROTHY M. ARMATA,

Plaintiffs,

vs.

WALTER L. KAUFMANN, M.D.,
and MEDICAL PROFESSIONAL MUTUAL INSURANCE COMPANY,

Defendant.

ORDER ON MEDICAL PROFESSIONAL MUTUAL
INSURANCE COMPANY'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO STAY COUNT V
OF PLAINTIFFS' COMPLAINT

After review of the papers submitted by both counsel, it is
apparent that there is no Massachusetts decision to the effect that
an insurer may be liable to a claimant for failure to effectuate a
prompt and fair settlement of a claim in which liability has become
reasonably clear even if a court or jury in the underlying action
finds against the claimant.  This Court concludes that at least in
those situations where liability is contested by the insured, as it
is in this case, an insurer cannot be liable under that provision
of c. 176D unless the claimant is successful after trial or by

2

settlement of the underlying action.  Although the cited Appeals

Court single justice decisions circumscribe only discovery, and do

not bar prosecution of the 176D claims, the logic of those

decisions supports this Court's conclusion that the claim against

the insurer here must be stayed until the resolution of the claims

made against the insured.

Raymond J. Brassard
Justice of the Superior Court

Dated: June 13, 1996

Entered on Docket 14 June 1996

676    *The Massachusetts Law Reporter*
Cite as 4 MASS. L. RPTR. No. 30, 676 (March 18, 1996)

804-5 (1992). The court must affirm the Board's decision if it is supported by substantial evidence, which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Seagram Distillers Co. v. Alcoholic Beverages Control Commission,* 401 Mass. 713, 721 (1988); G.L.c. 30A, §1(6).

Plaintiff first challenges the hearing officer's determination that the billboards are in harmony with the surrounding area under 711 C.M.R. 3.13(3). Plaintiff argues that the officer's characterization of two Cambridge citizens as having an "agenda" was unfair, because the witnesses had no financial stake in the outcome of the hearing; plaintiff also notes that the hearing officer did not mention in his findings the testimony of the Cambridge Director of Land Use and Zoning.

These complaints do not state grounds for reversing the Board's decision. The hearing officer is entitled to weigh the credibility of the witnesses. Furthermore, his determination was reasonably based on photographs, which showed several other billboards in the immediate area, and on the failure of the City's witness to testify to whether the billboards were out of harmony with the current surroundings (as opposed to the City's future plans to beautify the area). The Board's conclusion was thus supported by substantial evidence; nor is it arbitrary or capricious or an abuse of discretion.

Plaintiff also contests the Board's decision based upon 711 C.M.R. 3.13(5), which prohibits the renewal of billboard permits if the billboard is within 300 feet and visible from a park. The Board's regulations define "park" as "any park, playground, cemetery, or other land, regardless of ownership, which is available for public use, or reserved for the public, for recreation or conservation purposes." 711 C.M.R. 3.01. The Board's conclusion was based solely on the hearing officer's determination that Linear Park does not constitute a park, since all parties concede that the billboards are visible from and within 300 feet of Linear Park.

The hearing officer's ruling was based on the park evaluation form for Linear Park and testimony concerning the permitted uses of the land. He reasoned that the recreational use of Linear Park involves only bicycling and walking, activities that do not distinguish it from a sidewalk or roadway.[2] Furthermore, the hearing officer held that the developed, landscaped nature of Linear Park prevented it from serving a "conservation" purpose. Thus, the Board's conclusion that Linear Park is not a "park" under Board regulations was based on substantial evidence and was an acceptable interpretation of its own regulations.

In sum, plaintiff has failed to prove that the Board's decision was not supported by substantial evidence, based on an error of law, an abuse of discretion, or arbitrary or capricious. Therefore, the court must affirm the decision of the agency. See G.L.c. 30A,

§14(7); *Langlitz v. Board of Registration of Chiropractors,* 396 Mass. 374, 379 (1985).

ORDER

For the foregoing reasons, it is therefore ORDERED that judgment enter AFFIRMING the decision of the Outdoor Advertising Board.

---

[1]Ernest Penta, John Cerame, and Cambridge Lumber and Supply, Inc.

[2]Although the hearing officer did err in finding that Linear Park has no benches, this error alone does not require a reversal.

===

Jean Eloge Bellanton[1] et al.[2] v.
Simone Daniel et al.[3]
Superior Court, Suffolk, SS
No. 942338A
Memorandum Dated December 1995

**Trade Regulation – Unfair Insurance Practices Act – Coverage – Mass. Property Insurance Underwriting Assoc. Is Engaged in the "Business of Insurance" and Therefore Is Subject to the Act.**
**Trade Regulation – Unfair Trade Practices Act – Coverage – Mass. Property Insurance Underwriting Assoc. Is Engaged in "Trade or Commerce" and Therefore Is Subject to the Act.** The Massachusetts Property Insurance Underwriting Association is engaged in the "business of insurance" within the meaning of the Unfair Insurance Practices Act, M.G.L.c. 176D, and is engaged in "trade or commerce" within the meaning of the Unfair Insurance Practices Act, M.G.L.c. 93A. Recent SJC opinions holding that the Mass. Insurers Insolvency Fund and the Mass. Medical Professional Insurance Assoc. were not subject to Chapter 176D or Chapter 93D are not applicable because MPIUA is a profit venture which engages in its own claims adjustment and loss payment transactions.
**Insurance – Subrogation – Misc. Cases – Statute Barring Action Against an Insurer Until the Underlying Claim Has Been Resolved Does Not Bar Action for Unfair Settlement Practices, But Action Should Be Stayed.**
**Trade Regulation – Unfair Insurance Practices Act – Procedural Matters – Statute Barring Action Against an Insurer Until the Underlying Claim Has Been Resolved Does Not Bar Action for Unfair Settlement Practices, But Action Should Be Stayed.** M.G.L.c. 175, §113, which provides that an injured person has no cause of action against an insurer to reach and apply insurance proceeds until a judgment has been obtained against the insured, does not bar commencement of an action for unfair insurance practices under M.G.L.c. 176D, §3 or M.G.L.c. 93A, §9 before the underlying claim has been resolved. However the Chapter 176D and 93A action should be stayed pending resolution of the underlying claim.

FREMONT-SMITH, J. Plaintiffs Jean and Marie Bellanton seek damages arising from a fire in their apartment that resulted in the death of their children Markinson, Sophonie and Moise. In Count XVIII of the second amended complaint, plaintiffs asserted a claim against the Massachusetts Property Insurance Underwriting Association (the MPIUA) for unfair and deceptive insurance settlement practices in violation of G.L.c. 176D and 93A. The MPIUA now seeks to dismiss, or in the alternative, to stay the claim against it. For the following reasons, the MPIUA's motion to dismiss is DENIED, and the MPIUA's motion to stay is ALLOWED.

## BACKGROUND

Plaintiffs' complaint, as amended, contains the following allegations. Defendants Simone Daniel, Jean Daniel and Gerald Pierre owned the premises at 116-118 River Street in Hyde Park, Massachusetts. Beginning in about May 1991, plaintiffs rented and occupied a third floor apartment on these premises. On November 28, 1992, as the result of faulty electrical work, a fire occurred on the premises and quickly traveled to the third floor apartment, where the children were playing. Markinson, Sophonie and Moise Bellanton died in the fire, and Jean and Marie Bellanton suffered severe personal injuries.

Plaintiffs allege that the MPIUA insured the premises, and that it has violated G.L.c. 176D and 93A by failing to respond promptly to communications regarding the claim, failing to adopt and implement reasonable standards for the investigation and resolution of the claim, failing to promptly affirm or deny coverage, and failing to effectuate a prompt and fair settlement of claim in which liability had become reasonably clear.

The MPIUA now seeks to dismiss the claim against it because it is not engaged the "business of insurance" and so is not subject to G.L.c. 176D, and is not engaged in "trade or commerce" and is thus not subject to G.L.c. 93A. The MPIUA also seeks dismissal because the claim is premature until judgment is obtained against its insured. In the alternative, the MPIUA seeks to stay the proceedings on this claim until the underlying claims are resolved.

## DISCUSSION

When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), this court accepts as true the well pleaded factual allegations of the complaint, as well as any reasonable inferences that can be drawn therefrom in the plaintiffs' favor. *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 429 (1991), and cases cited. The complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Nader v. Citron*, 372 Mass. 96, 98 (1977), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## I. Applicability of G.L.c. 176 D and 93A.

Chapter 93A, Section 2, of the General Laws proscribes unfair or deceptive acts or practices in the conduct of any trade or commerce, and must be read to apply to those acts or practices that are perpetrated in a business context. *Barrett v. Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 775 (1992); *Poznik v. Massachusetts Medical Professional Insurance Association*, 417 Mass. 48, 52 (1994). To determine whether a transaction occurs in a business context, a court must consider the character of the party, the nature of the transaction, the activities engaged in by the party, and whether the transaction was motivated by business or personal reasons. *Barrett* at 775-76; *Poznik* at 52.

The Supreme Judicial Court has recently held that two entities, the Massachusetts Insurers Insolvency Fund (the MIIF) and the Massachusetts Medical Professional Insurance Association (the MMPIA), which bear some resemblance to the MPIUA, are not subject to G.L.c. 176D or G.L.c. 93A because they are not engaged in the "business of insurance" or in "trade or commerce." *Barrett* at 777 (considering "trade or commerce"); *Poznik* at 53 (considering "business of insurance" and "trade or commerce").

Chapter 175C of the General Laws was first enacted in 1968 to establish an urban area insurance placement facility to provide adequate property insurance coverage for hard-to-insure urban properties. The MPIUA was later established under c. 175C as a joint underwriting facility. G.L.c. 175C, §4. Although the character of the MPIUA is that of a statutorily mandated, not-for-profit association of all insurers writing certain kinds of direct insurance in the Commonwealth, similar to both the MIIF and the MMPIA, see *Barrett* at 776 (MIIF); *Poznik* at 52 (MMPIA); G.L.c. 175C (MPIUA), the inquiry does not stop there.

The Court in *Poznik* also considered other factors in determining whether the MMPIA is engaged in the "business of insurance" and in "trade or commerce," and thus subject to liability under G.L.c. 176D and 93A. Like the MPIUA under G.L.c. 175C, §§2 and 4, the MMPIA is "empowered to issue policies of insurance, underwrite the insurance, collect premiums, adjust claims, and pay losses." See *Poznik* at 48. Both entities have "no discretion as to whom [they] may insure." G.L.c. 175C, §2(3); *Poznik* at 51.

Unlike the MPIUA, however, the MMPIA can have no private profit and assumes no risk of loss. *Poznik* at 51. "Any revenue received by the MMPIA which exceeds liabilities and expenses must be returned to its policyholders or held as reserves to cover future liabilities." *Id.* Further, "unlike a private insurer," the MMPIA assumes no risk of loss because "if [it] operates at a deficit, it may seek to recover from 'all licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through the [MMPIA] or not." *Id.*, citing 1975 Mass. Acts, c. 362, §6.

Similarly, the member insurers of the MIIF can have no private profit and assume no risk of loss. The rates and premiums charged for insurance policies must be sufficient to cover the net amounts paid by the insurers to the Fund. G.L.c. 175D, §13. The member insurers may have returned to them "the amount by which the assets of the fund exceed the liabilities in proportion to the contribution of each insurer to the Fund." G.L.c. 175D, §12. This, however, is no more than a return of over-assessed amounts necessary to pay the "covered claims" of insolvent insurers, see G.L.c. 175D, §5(c), and must be deducted from future costs passed along to all policy holders. G.L.c. 175C, §13. Finally, no premiums or consideration are paid directly by insureds of insolvent insurers for the MIIF services. *Barrett* at 777.

In stark contrast, the members of the MPIUA "shall participate in its writing, expenses, *profits and losses* in the proportion that the premiums written by each such member . . . bear to the aggregate premiums written in the commonwealth by all members of the association." G.L.c. 175C, §4 (emphasis supplied). Policy holders pay direct consideration for insurance coverage obtained through the MPIUA. G.L.c. 175C, §2.[4] The MPIUA, or its members, thus share in private profit and bear the risk of loss, like a private insurer.

Accordingly, although the legislation declares that the purpose is to issue insurance policies to eligible applicants who are otherwise unable to obtain insurance, the MPIUA members are nevertheless permitted to share in private profits and losses, so that the claims adjustment and loss payment transactions may be properly characterized as being motivated by business reasons.

Because of these significant differences from the statutory schemes considered in *Barrett* and *Poznik*, the Court concludes that the MPIUA is engaged in the "business of insurance" and in "trade or commerce," so is within the reach of G.L.cc. 176D and 93A.

### II. Prematurity of claim.

The MPIUA next asserts that the plaintiffs' claim should be dismissed as premature and barred by G.L.c. 175, §113, which provides that an injured person has no right of action against an insurer to reach and apply insurance proceeds until a judgment has been obtained against the insured.

Section 9 of General Laws chapter 93A, however, establishes an independent cause of action for "any person whose rights are affected" by an insurer's violation of c. 176D, §3(9). G.L.c. 93A, §9; *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). The MPIUA's argument fails because plaintiffs do not seek to reach and apply insurance proceeds, but instead bring a separate claim against the insurer for its own allegedly unfair claims settlement practices in violation of G.L.c. 176D, §3(9)(b), (c), (e), and (f).

The MPIUA next asserts, relying on *Van Dyke, supra,* and *Chub v. Electric Ins. Co.*, 17 Mass.App.Ct. 61 (1983), that the claim should be dismissed because until plaintiffs establish that the MPIUA's insured is liable to them

for damages, plaintiffs cannot show that their rights have been adversely affected and therefore fail to state a claim for a c. 93A violation. The MPIUA correctly notes that in both *Van Dyke, supra,* and *Chub, supra,* summary judgment was upheld in favor of the insurer. These cases, however, involved summary judgment following trial or settlement of the underlying claims where the trial court judge had concluded that the plaintiffs had failed on the summary judgment record to show a reasonable likelihood of proving damages at trial. The MPIUA's argument is not, however, appropriate for consideration on a motion to dismiss.

### III. Stay of proceedings.

Nonetheless, a verdict in favor of the MPIUA's insured, or a verdict or settlement in the range of the amounts offered by the insurers, would in all probability render plaintiffs' claim moot. The evidence needed to support the cc. 176D and 93A claims, other than the ultimate liability determination, is not duplicative of the evidence needed to support the underlying claims. Further, all discovery in a c. 176D suit is ordinarily subject to stay pending resolution of the underlying claims. See *Gross v. Liberty Mutual Ins. Co.*, No. 84-0138 (App. Ct. April 24, 1984) (Kass, J., single justice), slip op. at 2; *Belcher v. Pawtucket Mutual Ins. Co.*, No. 89-J-672 (App.Ct. Oct. 5, 1989) (Kass, J., single justice), slip op. at 1; *Royal Ins. Co. v. Stoneham Auto Body*, No. 93-J-923 (App.Ct. Dec. 7, 1993) (Gillerman, J., single justice), slip op. at 1.

For these reasons, the Court concludes that the interests of the administration of justice will best be served by a stay of all proceedings under Count XVII of the complaint until the underlying claims against the MPIUA's insured are tried or settled.

### ORDER

For the foregoing reasons, it is hereby ORDERED that defendant Massachusetts Property Insurance Underwriting Association's motion to dismiss is DENIED. It is further ORDERED that all proceedings under Count XVII of the complaint shall be STAYED until the underlying claims against the MPIUA's insureds are tried or settled.

[1]Individually, and as next friend of, and administrator of the estates of, Markinson Bellanton, Sophonie Bellanton, and Moise Bellanton.

[2]Marie Micheline Bellanton, individually, and as next friend of, and administratrix of the estates of, Markinson Bellanton, Sophonie Bellanton, and Moise Bellanton.

[3]Jean Daniel, Gerald Pierre, Francois Clairmont, the Massachusetts Property Insurance Underwriting Association, and Adams Associates, Inc.

[4]When originally enacted, G.L.c. 175C established an insurance placement facility, with premiums paid to the company or companies that agreed to write the requested coverage. In 1973 (according to defendant's brief), the provisions of §4 were invoked by the commissioner of insurance, and a joint underwriting association, the MPIUA, was established to replace the placement facility. The premiums payable to the facility under §2 would now be paid to the underwriting association.

EXHIBIT L

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
97-11049-NG

MARY AND ROBERT MILLER

Plaintiff

v.

RUDOLPH MUTO, M.D., ET AL.

Defendants

ORDER

August 31, 1998

COHEN, M.J.

Pursuant to Rules 7.1(d) and (e) of the Local Rules of this Court [effective September 1, 1990], and upon review of the relevant pleadings, the Renewed Motion for Stay (# 36) filed by defendant ProMutal is allowed.

In this court's view, the reasoning of Associate Justice Kass in <u>Jacqueline R. Gross, et al.</u> v. <u>Liberty Mutual Insurance Company</u>, No. 84-0138 (Massachusetts Appeals Court, April 24, 1984)(Kass, Single Justice), and <u>Jennifer Belcher</u> v. <u>Liberty Pawtucket Mutual Insurance Company</u>, No. 89-J-672 (Massachusetts Appeals Court, September 27, 1987)(Kass, Single Justice), in granting stays pending resolution of the underlying tort action is compelling and sound. And, more to the point, the reasoning of Associate Justice Kass is fully consistent with the spirit of the Civil Justice Reform Act and its salutary goal that

unnecessary expenses not be incurred during the course of discovery.

Accordingly, the Renewed Motion for Stay (# 36) filed by defendant ProMutal is allowed, and the file is hereby ordered returned to the Clerk.

UNITED STATES MAGISTRATE JUDGE

# COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                    Superior Court
                                Civil Action No. 2003-2669-C



Maria Storms,

                    Plaintiff,

        v.

Dr. Fred G. Boustany, individually and d/b/a
Boston Dental, Dr. Inman Salama, ProMutual
Group and Dentist's Advantage a/k/a Affinity
Insurance Services, Inc,

                    Defendants.

## MOTION OF DEFENDANT PROMUTUAL TO STAY COUNT IX
### and
### REQUEST FOR HEARING

This case arises from the alleged malpractice of defendants Fred G. Boustany, D.M.D.,

and Inman Salama, D.M.D. Defendant ProMutual Group ("ProMutual") is the professional

liability insurer for Dr. Boustany. In count IX of her complaint, plaintiff alleges that ProMutual

has violated G.L. c. 93A and c. 176D by failing to make a reasonable offer of settlement of her

claims against Dr. Boustany. ProMutual denies these allegations.

For the reasons set forth in the Memorandum submitted in support of this motion,

ProMutual moves to stay count IX of plaintiff's complaint until the underlying claims against Dr.

Boustany have been resolved and it thus is determined whether or not ProMutual's insured has

any liability for plaintiff's alleged injuries. A stay of Count IX will save the Court and the

parties from potentially wasteful expenditures of time and effort, will prevent the Court from

having to resolve discovery disputes raising complex privilege and work-product issues and will

prevent the risk that ProMutual's insured would be prejudiced if plaintiff were allowed to

*11-281-03*

COMMONWEALTH OF MASSACHUSETTS

EXHIBIT N

APPEALS COURT

2003-J-0397
(Essex Superior
No. ESCV 2003-00960)

JOSEPH NASTA

vs.

PREMIER INSURANCE COMPANY.

ORDER

Before me is the petition of the defendant, Premier
Insurance Company, seeking interlocutory review pursuant to
G. L. c. 231, § 118 (first paragraph), of an order of a judge of
the Superior Court requiring that Premier and its policyholder,
the plaintiff, Joseph Nasta, arbitrate all disputes associated
with Nasta's claims for uninsured and underinsured motorist
benefits. Premier contends that the judge gave an overly broad
reading to the arbitration clause contained in the policy and, as
a result, erroneously expanded the scope of the arbitration to
include coverage issues and claims of improper claims handling
under G. L. c. 93A. After hearing and consideration of the
parties' submissions, I conclude that Premier is entitled to
relief.

~~Background. Nasta was seriously injured in June, 2002, when~~
the car he was driving was struck twice in relatively rapid
succession: first by an unknown, "hit and run" vehicle, and then,
after coming to rest against a guardrail, by a vehicle driven by

*q*

Joshua Kigazi. Nasta was covered by a standard, Massachusetts auto policy issued by Premier, with optional uninsured and underinsured motorist benefits limits of $250,000 per person and $500,000 per accident. With Premier's assent, Nasta settled his claims against Kigazi for Kigazi's policy limit of $20,000. Nasta then demanded first-party payments under his policy with Premier, claiming that he had been injured in two separate accidents, one (the hit-and-run collision) entitling him to uninsured motorist benefits and the other (the Kigazi collision) entitling him to underinsured benefits.

Premier declined to settle with Nasta, asserting that Nasta was primarily at fault for the collisions and was not legally entitled to recover damages from the owners or operators of the other vehicles. Premier also disagreed that there was more than one accident or that both uninsured and underinsured motorist benefits could be triggered in these circumstances.

Unhappy with Premier's handling of his claims, Nasta sent a series of demand letters pursuant to G. L. c. 93A, § 9, claiming that Premier failed to make a reasonable settlement offer in a case of clear liability, in violation of G. L. c. 176D; that Premier acted unfairly and deceptively by negotiating with and eventually hiring one of Nasta's attorneys while this matter was pending; and that Premier wrongfully refused to submit all aspects of Nasta's claims to arbitration. Nasta then filed an

2

action in Essex Superior Court to compel arbitration of all of the parties' disputes: Nasta's claims for policy benefits, including the question of his potential entitlement to both uninsured and underinsured benefits in the circumstances of this accident, and his claims under G. L. c. 93A. On July 28, 2003, a judge of the Superior Court, acting on a motion brought by Nasta, ordered that all of these matters be submitted to arbitration. It is from this order that Premier seeks interlocutory relief.

Discussion. As an initial matter, the parties disagree as to whether it is appropriate for a single justice to review the trial judge's order compelling arbitration. Unquestionably, the order is not final and appealable in the ordinary course, not only because no judgment has entered, but also by its nature. See Old Rochester Regional Teacher's Club v. Old Rochester Regional School Dist., 18 Mass. App. Ct. 117, 118 (1984); School Committee of Agawam v. Agawam Ed. Ass'n., 371 Mass. 845, 846-847 (1977). That is not to say, however, that an order compelling arbitration is immune from review by a single justice under G. L. c. 231, § 118 (first paragraph). Indeed, although relief under this statute is granted only sparingly, there may be rare occasions when intervention by a single justice is the most practical way to address a clear error of law in the scope of a trial court's arbitration order.

As discussed further in addressing the merits of Premier's

3

petition, this is a case that calls for single justice intervention.  The law is clear that the arbitration agreement in question is a limited one.  Moreover, even if Premier could again raise the arbitrability of particular issues on a later motion to vacate the arbitration award, see <u>School Committee of Agawam</u> v. <u>Agawam Ed. Ass'n.</u>, <u>supra</u> at 847 & n.4 (decided as to arbitrations under G. L. c. 150C), this would not be an adequate remedy.  The litigants already would have been put to the unnecessary delay and expense of arbitrating issues that are beyond the scope of their agreement, and Premier may have been prejudiced in its defense of the properly submitted issue by having to arbitrate other, improperly submitted claims.

Turning to the merits, it is evident from the judge's memorandum of decision that he construed <u>Drywall Systems, Inc.</u> v. <u>ZVI Construction Co., Inc.</u>, 435 Mass. 664, 666-667 (2002), to compel the result he reached.  <u>Drywall</u> held that a subcontractor who sought unpaid contract balances and damages for delay and business liquidation from its general contractor was entitled to assert 93A claims in the parties' arbitration proceedings and to receive an award that included multiple damages.  However, <u>Drywall</u> is significantly different from the present case. ~~The parties' agreement to arbitrate in Drywall was a broad~~ commercial arbitration agreement, stating that the parties agreed to submit to arbitration "[a]ny controversy or [c]laim . . .

4

arising out of or related to this [s]ubcontract . . .." It is
the breadth of this language that was essential to the court's
decision. Furthermore, the 93A claims in Drywall were grounded
in the same facts and circumstances as the subcontractor's other
claims. Thus, there was no question that it would be practical
and efficient for the arbitration to address all of the parties'
disputes.

In the present case, the arbitration agreement[1] is more
narrowly written. The relevant language reads:

> "The determination as to whether an injured person is
> legally entitled to recover damages from the legally
> responsible owner or operator will be by agreement
> between us and the injured person. The amount of the
> damages, if any, will be determined in the same way.
> Arbitration will be used if no agreement can be
> reached."

This language is in accordance with G. L. c. 175, § 111D, which

provides:

> "A policy of motor vehicle liability insurance . . .
> may provide for the payment of all sums which the
> insured or his legal representative shall be legally
> entitled to recover as damages from the owner or
> operator of an uninsured motor vehicle because of
> bodily injury, sickness or disease, including death
> resulting therefrom, sustained by the insured, caused
> by accident and arising out of the ownership,
> maintenance or use of such uninsured motor vehicle.
> Such policy or endorsement or rider shall provide that
> determination as to whether the insured or his legal
> representative is legally entitled to recover such

---

[1] The identical agreement appears in both pertinent
sections of the policy, Part 3 - Bodily Injury Caused by an
Uninsured Auto and Part 12 - Bodily Injury Caused by an
Underinsured Auto.

> damages, and if so the amount thereof, shall be made by
> agreement between the insured or such representative
> and the insurer or, if they fail to agree, by
> arbitration."

Under long-standing case law, this particular arbitration requirement relates only to "questions concerning the insured's rights against the owner and operator of the uninsured motor vehicle." Aetna Cas. & Sur. Co. v. Poirier, 371 Mass. 257, 259-260 (1976). It does not embrace other issues of the insurer's liability, such as coverage questions. See Royal Indem. Co. v. Blakely, 372 Mass. 86, 87 n.2 (1977). Thus, for example, whether an insured may "stack" policy benefits is for the courts, and not for an arbitration panel, to decide. See Lumbermen's Mut. Cas. Co. v. Malacaria, 40 Mass. App. Ct. 184, 185 (1996).

Consistent with these principles, Nasta's claim that he is entitled to recover both uninsured and underinsured motorist benefits in the circumstances of this case is a legal question outside the purview of the arbitration agreement, albeit one that may be elucidated by facts to be determined at arbitration.[2] Likewise, Nasta's 93A claims are outside the scope of the arbitration agreement. Unlike the situation presented in Drywall, the 93A claims are not grounded in the same facts and

---

[2] The parties have indicated their willingness to negotiate a set of special questions to submit to the arbitration panel to facilitate later decision by the courts of the question of Nasta's entitlement to both forms of coverage.

6

circumstances as Nasta's other claims. They do not pertain to the liability of the hit-and-run and Kigazi vehicles or the damages sustained by Nasta as a result of the accident. Instead, they relate to the behavior of Premier after receiving Nasta's claims.

Moreover, arbitrating all of the parties' disputes together may be prejudicial to the insurer, since the thought processes behind its decision not to settle would be aired at the same time that it was attempting to defend the underlying claims. Nasta's counsel acknowledged as much at the hearing on Premier's petition, suggesting that prejudice could be avoided by holding a two-stage arbitration proceeding -- the first stage devoted to deciding the underlying claims, and the second stage devoted to hearing the 93A claims. However, relatively little economy would be achieved by having a two-stage arbitration rather than an arbitration followed by a court case.

Nasta also claims that it is he who will suffer the greater prejudice if he is not allowed to arbitrate his 93A claims in the same proceedings as his underlying claims. In this regard, Nasta relies upon dictum in Drywall discussing the earlier case of Bonificlio v. Commercial Union Ins. Co., 411 Mass. 31, 37 (1991), in which the Supreme Judicial Court refused to multiply the amount of an underinsurance arbitration award as a component of damages in a subsequent 93A claim arising from the insurer's bad

7

faith failure to settle the underinsurance claim.    The <u>Drywall</u>
dictum states that "the central holding" of <u>Bonifiglio</u> was that,
where multiple damages are sought under G. L. c. 93A, § 9 "based
on 'claims arising out of the same and underlying transaction,'
those claims must be determined in the same proceeding with the
multiple damages claims."    <u>Drywall Systems, Inc.</u> v. <u>ZVI Const.
Co., Inc.</u>, <u>supra</u> at 668.    According to Nasta, this dictum
intimates that an uninsured or underinsured arbitration award may
be multiplied as 93A damages, but only if the insured's 93A
claims are arbitrated together with the underlying uninsured or
underinsured claim.

Nasta's interpretation of the <u>Drywall</u> dictum seems unduly
optimistic, particularly in view of the later observation in
<u>Murphy</u> v. <u>National Union Fire Ins. Co.</u>, 438 Mass. 529, 533
(2003), that the principle enunciated in <u>Bonifiglio</u> was that "an
arbitration award is not a 'judgment'" subject to being doubled
or trebled under G. L. c. 93A, § 9.    Be that as it may, whatever
the <u>Drywall</u> dictum may signify in a case where an insurer
voluntarily agrees to arbitrate an insured's 93A claims together
with his underlying uninsured or underinsured claim, it does not
enlarge the limited scope of the arbitration agreement contained
in the policy.

In conclusion, Premier may not be compelled to arbitrate
issues of coverage or issues of liability under G. L. c. 93A

8

arising from its handling of Nasta's uninsured and underinsured claims. The order of the Superior Court compelling arbitration is therefore modified. Absent agreement to the contrary, the parties shall proceed to arbitration solely to determine whether Nasta is legally entitled to recover damages from the owners and operators of the other vehicles alleged to have been involved in the accident, and, if so, the amount of Nasta's damages.

By the Court (Cohen, J.),

Assistant Clerk

Entered: September 11, 2003